**Kenneth Wayne DANIEL, Plaintiff,**

v.

**B. L. PORTER et al., Defendants.**

**No. C–C–74–113.**

United States District Court, W. D. North Carolina, Charlotte Division.

Feb. 24, 1975.

George S. Daly, Jr., Casey & Daly, Charlotte, N. C., for plaintiff.

Frank B. Aycock, III, Charlotte, N. C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

McMILLAN, District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary

Judgment, filed December 12, 1974. A hearing was held on January 17, 1975 in chambers, at which all parties and counsel were present. Defendants made no filings directed to the Motion prior to the hearing, but were given leave to file a response within a week thereafter.

Based upon the Admissions, the Answers to Interrogatories, the depositions and the response of the defendants, the following facts and conclusions appear without substantial dispute.

1. The Court has jurisdiction of the parties and of the subject matter.

2. Plaintiff was employed as a police officer by Mecklenburg County in 1965 and has been continuously so employed to date. In September of 1973, he was promoted to sergeant. On November 8, 1973, one Lawrence Edward Jones complained to Defendants Grimes and Owens, members of the Mecklenburg County Police Department Internal Affairs [investigative] Section, that plaintiff had struck him and members of plaintiff's squad had abused him in the course of an alleged illegal search of Jones's apartment. Plaintiff and the men in his squad gave written responses to these allegations to Defendants Owens and Grimes, which responses took issue with the bulk of the allegations made by Jones. Owens and Grimes then interviewed plaintiff and the members of his squad, secretly tape recording some of these interviews. A written summary of their investigation was forwarded through channels to a Departmental Review Board, composed of Mecklenburg County police officers. This summary was not made available to plaintiff. Had plaintiff had access to it, he would have learned various items of helpful information: e. g., that a member of his squad (Reagan) had told Owens and Grimes that plaintiff had told him to make up a false story about the incident and tell it to Internal Affairs; and that Complainant Jones had been given a polygraph examination and shown "deception" in certain material areas, particularly including a showing of deception as to whether he had been struck by a sergeant.

Plaintiff was notified of the Review Board hearing by a letter as follows:

"You are invited to appear before the Review Board for the purpose of discussing anything you feel is pertinent to your case prior to the time the Board begins its deliberations."

The pertinent regulations regarding the Review Board provide:

"The Review Board Panel will consider investigative reports, statements, other documents, testimony of witnesses, previous disciplinary action against the accused, commendations, service history, and other such evidence as it deems appropriate. They may order the accused or any other member of the Department to appear before them. On the basis of its findings, they will refer all cases with recommendations to the Chief of Police."

Plaintiff elected to attend the hearing, and it was opened by the Presiding Officer with the announcement to plaintiff that he could ask any question he wished of any person in the room. Present were Grimes, Owens, plaintiff and the Board members. Plaintiff asked Grimes whether his earlier interview had been tape recorded, and after repeating the question several times drew from Grimes the admission that it had been. Plaintiff then asked the Presiding Officer what the charges against him were. The Presiding Officer asked Grimes whether a statement of charges had been given to plaintiff. Grimes replied negatively. Then the Presiding Officer went through his stack of papers and thereafter told plaintiff that he was charged as follows:

a. Losing control of the arrest situation;

b. Losing control of his men;

c. Allowing the complainant to be verbally and physically abused; and

d. Allowing the complainant's apartment to be left in disarray.

Plaintiff thereafter presented nothing further to the Board and departed.

Thereafter the Review Board issued its decision in the following form:

### ALLEGATION

"That Sgt. Daniel beat Complainant Jones with a night-stick.

### FINDINGS

That Sgt. Daniel did not beat Complainant Jones, howerver (sic), there is *evidence* that he did not control the situation and did make attempt (sic) to conceal or alter the facts of this case; and that he contributed to this explorator (sic) search. (Emphasis supplied.)

### RECOMMENDATIONS

That he be reduced to his former rank of Patrolman, this pursuant to Chapter II, Paragraph III and Iv (sic) of the Civil Service Rules and Regulations."

Defendant Porter concurred in the Board's action, then personally delivered to plaintiff the following notification of reduction of rank:

"Pursuant to Chapter II, Paragraph III and IV of the Civil Service Rules and Regulations, you are hereby reduced to your former rank of police patrolman effective forthwith.

This action is a result of investigative findings and testimonial evidence pertaining to the allegations made by Lawrence Edward Jones.

A thorough investigation, testimonial evidence and review *establish the following facts.*

That you were the Supervisor in Charge at the time Lawrence Edward Jones was arrested and his home searched.

That officers under your supervision physically and verbally abused Complainant, made an illegal exploratory search of his apartment and that you failed to take corrective action, as directed in Departmental General Order No. 3, Sec. III, B, Para. 1.

Further, that you attempted to obstruct, hinder and impede an internal investigation, in that, you concealed and misrepresented material facts and caused subordinates to conceal and misrepresent material facts pertaining to the investigation." (Emphasis supplied.)

Plaintiff did not open his letter until he returned home. He then learned for the first time that he had been charged with a "cover-up".

There are presently about 27 officers above the rank of patrolman in the Mecklenburg County Police Department, about 15 of whom are sergeants. During the more than four years that Defendant Porter has been Chief of Police, no officer other than plaintiff has been demoted.

The Mecklenburg County Police Civil Service Rules and Regulations provide in pertinent part as follows:

"Chapter II. Probation

. . . . . .

III. All promotions in the Mecklenburg County Police Department will be subject to a six (6) months probationary period, commencing with day of promotion.

IV. Should the officer *prove unfit* during the probationary period, he will be reduced to his former rank by the Chief of Police." (Emphasis supplied.)

The Motion for Partial Summary Judgment seeks only to return plaintiff to the rank, duty and pay of sergeant. Further relief prayed in the Complaint is not sought by the Motion, nor is any injunction sought against possible future disciplinary action against plaintiff on account of the Jones incident. All that is sought is to restore plaintiff to the position he held prior to his hearing before the Departmental Review Board, after which defendants may again proceed against him if so advised. The Court is informed that, since the date of plaintiff's hearing before the Departmental

Review Board, certain substantial changes have been made in the procedures obtaining at such hearings. The County Police Department is to be commended for this attention to procedures, and these new rules (which the Court has not seen) may afford adequate procedural due process at such later hearing as may occur. For present purposes, however, the new rules are not of any moment.

On the foregoing record, two questions arise: Whether plaintiff was entitled to the protection of the Fourteenth Amendment due process clause at his Departmental Review Board hearing; and if so, whether the procedures there employed gave him the process that was due. The Court is not called upon in this litigation to describe the procedures that suffice for a constitutional mimimum at such a hearing, but only to decide whether the procedures in fact afforded plaintiff surmount the constitutional threshold.

 Although there is no constitutional right to be a policeman, McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892) (Holmes, J.), a public employee whose liberty or property interest is infringed by discharge is entitled to due process. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Smith and Gebala, "Job Security for Public Employees", ) W & L L.Rev. 545 (1974).[1]

Both "liberty" and "property" interests of plaintiff were infringed by his demotion.

 Plaintiff was charged with various offenses which are damaging to one's reputation: assault on an arrestee, dereliction of duty (loss of control of his men), and dishonesty ("cover-up"). These charges challenge his "good name, reputation, honor or integrity", Wiscon-

sin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and therefore implicate his "liberty", Roth, supra, 408 U.S. at 573, 92 S.Ct. 2701. The present facts are solidly within the realm of those held by numerous authorities to implicate one's liberty. See, e. g., Wisconsin v. Constantineau, supra, (State posting of name as one to whom liquor should not be sold); United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed.2d 1252 (1946) (Congressional finding that employee is "subversive"); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (legislative declaration of disloyalty); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (the "Attorney General's List"); Wellner v. Minnesota State Junior College Board, 487 F.2d 153 (C.A. 8, 1973) (charge of racism against non-tenured teacher); Stewart v. Pearce, 484 F.2d 1031 (C.A. 9, 1973) (employer's implication that English instructor was mentally unfit to hold his job); Suarez v. Weaver, 484 F.2d 678 (C.A. 7, 1973) (charge that doctor excessively prescribed narcotics); and McNeill v. Butz, 480 F.2d 314 (C.A. 4, 1973) (charge that federal employees had been dishonest in their duties); cf., Perry v. Sindermann, supra, (charge of insubordination).

 Plaintiff's demotion also infringed certain of his "property" interests. Promoted officers are on "probation" for six months, but plaintiff's then probationary status is not dispositive against him at this point. The Fourteenth Amendment concept of "property" is not to be limited by the niceties of administrative labeling. "Property" includes an interest in continued receipt of welfare, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); includes an implied promise of continued employment, Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); and includes contracts guar-

---

1. Absent liberty or property interests, a public employee is subject to summary discharge, so long as it is not in retribution for exercise of any constitutionally protected right. Hodgin v. Noland, 435 F.2d 859 (C.A.4, 1970).

anteeing continued employment absent "sufficient cause" for discharge, *cf., Roth, supra,* at 578, 92 S.Ct. 2701. It is enough that one has de facto tenure or a common law equivalent of tenure, *Sindermann, supra,* at 602, 92 S.Ct. 2694. The record here amply establishes such an interest. The Civil Service Rules provide that "should the officer *prove unfit* during the probationary period, he will be reduced to his former rank by the Chief of Police" (emphasis supplied). This is the equivalent of "sufficient cause", *cf., Roth, supra,* at 578, 92 S.Ct. 2701. That no other officer had ever been demoted during Chief Porter's four years in office shows that promotion amounts to de facto tenure.

 Plaintiff was not afforded procedural due process. He was not given sufficient prior notice of charges, compulsory process for witnesses, the right to cross-examine, and the right to a decision based on the record. These are the nub of procedural fairness. Mullane v. Central Hanover B & T Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Wisconsin v. Constantineau, *supra;* Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, *supra; cf.,* Givens v. Poe, 346 F.Supp. 202 (W.D.N.C.1972); Sigmon v. Poe, 381 F.Supp. 387 (W.D.N.C.1974). The unfairness to which the lack of procedural due process tends to lead is well shown in this case, where the Review Board in its written decision made only one charge, found that charge not to be sustained, but then went on to punish plaintiff because there was "evidence" of *other* charges against him.

There is some irony here. Police (though not usually the defendants in this case, the Mecklenburg County Police) have been in court frequently in recent years under charges of failing to accord due process to persons suspected or accused of crime. In a thoroughly praiseworthy effort to hold their own officers to a high due process standard *vis-a-vis* the public, defendants appear to have failed to accord due process to one of their own; this is the first time in local memory that a police department has been sued for failing to accord due process to officers charged with failing to accord due process to persons suspected of crime. Nevertheless, under the Constitution, sergeants are people too. Though the court cannot honestly be critical of the purposes and good faith of the defendants in this case, it is necessary to decide the constitutional issue as the evidence presents it.

Plaintiff is entitled to the relief sought in the Motion for Partial Summary Judgment, because it appears that there is no genuine issue as to any material fact. Plaintiff was deprived of both liberty and property without procedural due process, and is entitled to relief.

### ORDER

Based upon the foregoing, and subject to the foregoing qualifications, the defendants are ordered to restore the plaintiff forthwith to the rank, duty and pay of sergeant with the Mecklenburg County Police Department.