Filed 10/5/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| OSCAR RUIZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MUSCLEWOOD INVESTMENT PROPERTIES, LLC et al.,<br><br>    Defendants and Respondents. | B280928<br><br>(Los Angeles County<br>Super. Ct. No. BC597411) |

APPEAL from orders of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Reversed and remanded.

Barbosa Group and Patricia Barbosa for Plaintiff and Appellant.

Everett L. Skillman; Bremer, Whyte, Brown & O'Meara, John V. O'Meara, Arash S. Arabi, and Lital Rebecca Ruimy for Defendants and Respondents.

_____

# I. INTRODUCTION

Plaintiff Oscar Ruiz is a disabled person who uses a guide dog. He alleged that defendants Edward Lopez and Musclewood Investment Properties, LLC (Musclewood)[1] violated his rights under the Disabled Persons Act (Civ. Code, § 54 et seq.) (DPA),[2] by allowing their guard dog to interfere with and attack his guide dog. Plaintiff contends the trial court erred by sustaining a demurrer to his cause of action under the DPA without leave to amend. We agree and reverse. We also reverse the order granting the motion to strike.

# II. BACKGROUND

A. *Procedural History Prior to First Amended Complaint*

On October 14, 2015, plaintiff filed a complaint against defendants for violation of the DPA, the Bane Act, and common law and per se negligence.[3] Defendants demurred, and the trial

---

[1] Musclewood's correct name is "Musclewood Property Investments, LLC."

[2] Further statutory references are to the Civil Code unless otherwise indicated. "Part 2.5 of division 1 of the Civil Code, currently consisting of sections 54 to 55.3, is commonly referred to as the 'Disabled Persons Act,' although it has no official title." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 674, fn. 8.)

[3] Nicole Bautista was also a plaintiff in the action below, but does not appeal.

2

court sustained the demurrer as to the first and second causes of action with leave to amend.

B. *First Amended Complaint*

On June 3, 2016, plaintiff filed his first amended complaint, asserting causes of action for violation of the DPA and common law and per se negligence only. According to the factual allegations in the first amended complaint, which we accept as true (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6), plaintiff has been legally blind since the age of eight. Plaintiff used a guide dog named Carbon. Lopez was the owner of Musclewood, a business located in Bell Gardens, California. Defendants operated a truck hauling business that required trucks to enter and exit the property through a large metal gate. Defendants had a guard dog that they permitted to be loose on the property.

To maintain his independence, plaintiff had been trained to use a route that passed in front of defendants' business, when he travelled to the market or bus stop. It is not easy for a blind person to learn alternate routes. The metal gate of defendants' business was adjacent to a public sidewalk used by plaintiff for his route. Defendants' guard dog was not trained, leashed, or otherwise controlled or restrained and was thus free to exit the business property, through the metal gate, onto the sidewalk. The guard dog attacked or growled at plaintiff's guide dog on six occasions, including in July, September, and October 2013, September 2014, and February and June 2015. Plaintiff complained after these incidents to defendant Lopez, Musclewood employees, and animal control. Defendants did not act to restrain, control, or prevent their guard dog from attacking or

3

threatening plaintiff's guide dog, nor did defendants attempt to keep the gate closed when plaintiff walked by. Because plaintiff could not see, he could not protect himself or his guide dog from the guard dog. As a result of these incidents, plaintiff stopped walking in front of defendants' business. Following the attacks by defendants' guard dog, plaintiff's guide dog became fearful of other dogs, aggressive, and unable to consistently perform its guide dog duties.

Plaintiff alleged a violation of the DPA, citing sections 54, 54.1, and 54.3. Plaintiff sought actual damages, attorney fees, injunctive relief, and treble damages.

C. *Partial Demurrer, Motion to Strike, and Dismissal*

On June 21, 2016, defendants demurred to the DPA cause of action. Defendants asserted that plaintiff had failed to allege unequal access. Defendants cited to plaintiff's original complaint, in which plaintiff alleged that defendants' guard dog attacked disabled as well as other pedestrians. Based on these prior pleadings,[4] defendants argued plaintiff failed to allege he was denied equal access *because of* his disability. Defendants also contended that in order to state a claim under the DPA, plaintiff was required to—but had not—alleged that defendants maintained a policy or structure that denied a disabled person equal access.

Plaintiff responded that he was not pursuing a claim based on section 54.1, but instead alleged violations of sections 54 and 54.3. Alternatively, and even assuming it was necessary to allege

---

[4] The prior pleadings are not included in the record on appeal.

4

a denial of equal access, plaintiff argued his allegations were sufficient because blind people are less able than others to defend themselves from dog attacks. Plaintiff also argued that he had sufficiently alleged that defendants' policies, of allowing their guard dog to roam unleashed and opening the property gate without controlling their guard dog, interfered with plaintiff's rights. Finally, plaintiff asserted that a violation under the DPA does not require any discriminatory intent by defendants.

On June 21, 2016, defendants moved to strike portions of plaintiff's first amended complaint, including: the first cause of action for violation of the DPA; prayer for injunctive relief; prayer for treble damages; and prayer for attorney fees. Defendants argued that since plaintiff failed to state a DPA cause of action, the injunctive relief, treble damages, and attorney fees requested should be stricken as these remedies are not available for a negligence cause of action.

On September 13, 2016, the trial court conducted a hearing on the demurrer and motion to strike. The court, citing plaintiff's original complaint, found plaintiff had failed to allege that he was denied equal access because of his disability. The trial court thus sustained the partial demurrer to the DPA cause of action without leave to amend. The trial court also granted the motion to strike in its entirety.

On December 22, 2016, plaintiff moved to dismiss the action with prejudice. The dismissal was entered the same day. Plaintiff appeals from the order sustaining the partial demurrer.

# III. DISCUSSION

## A. *Standard of Review*

"'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [(*Zelig*)].) Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 (*Aubry*).) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Zelig, supra,* 27 Cal.4th at p. 1126.)" *(City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "In ruling on a demurrer, the court may "'take judicial notice of a party's earlier pleadings . . . ." [Citations.]'" (*Wilkinson v. Zelen* (2008) 167 Cal.App.4th 37, 43.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]'" (*Aubry, supra,* 2 Cal.4th at p. 967.)

## B. *Rules of Statutory Construction*

We review questions of law and statutory interpretation de novo. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1276.) "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the

6

statute's words and give them their usual and ordinary meaning. [Citation.]'" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1138.) "In doing so, however, we do not consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] . . . We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" (*People v. Mendoza* (2000) 23 Cal.4th 896, 907-908.) "'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.'" (*People v. Robinson, supra*, 47 Cal.4th at p. 1138.)

## C. *Plaintiff Stated a Valid Claim for Relief under Section 54.3*

Section 54.3, subdivision (a) describes a cause of action against: "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in [s]ections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under [s]ections 54, 54.1 and 54.2[.]" Plaintiff sufficiently alleged a cause of action under section 54.3.

### 1. Disability

"'Disability' means any mental or physical disability as defined in [s]ection 12926 of the Government Code." (§ 54, subd. (b)(1).) Plaintiff alleged that he was legally blind, thus satisfying this element. (Gov. Code, § 12926, subd. (m)(1).)

7

### 2. Denial or interference

Section 54.3 defines "'[i]nterfere'" to include "preventing or causing the prevention of a guide dog . . . from carrying out its functions in assisting a disabled person." The complaint described a guide dog's functions: "Guide dogs are given to blind persons by non-profit organizations that specifically breed and train dogs to work as guide dogs, and are certified by the state and licensed to pair guide dogs with disabled persons. . . . These guide dogs are trained to be under the tight control of their handler/blind person, and ignore distractions, including any other dogs, children, and provide minimal protection by alerting a blind person[] of perceived danger. Guide dogs are specifically trained not to react aggressively in any situation, as this would disqualify the dog from being able to stay with a blind person if the guide dog is being aggressive. . . . Any guide dogs who are distracted in public, or act aggressively in any situation may result in the dog being retired as a guide dog." Plaintiff further alleged that as a result of defendants' guard dog's attacks, plaintiff's guide dog was "now nervous and afraid around other dogs and [did] not properly follow commands." Thus, plaintiff sufficiently alleged interference.

### 3. Enjoyment of public facility

The plain meaning of "[e]njoyment," is "possession and use." (Black's Law Dict. (10th ed. 2014) p. 647, col. 1.) Although section 54 does not specifically define "public facilities," it lists a number of locations to which individuals have the right to full and free use, and that list includes sidewalks. (§ 54, subd. (a).)

8

Here, plaintiff alleged that he and his dog had been attacked six times by defendants' dog, while walking on the sidewalk. He further alleged that as a result, he no longer walked on that portion of the sidewalk. Plaintiff sufficiently alleged a deprivation of his enjoyment of the sidewalk.[5]

### 4. Intent

We need not decide for purposes of resolving plaintiff's appeal from the demurrer ruling here whether section 54.3 should be construed to include an intent element, i.e., that liability may only attach where a plaintiff alleges not only interference with admittance to or enjoyment of public facilities, but also an intent to so interfere. Defendants' guard dog's repeated attacks on plaintiff's guide dog and defendants' alleged knowledge of those attacks permits a reasonable inference of intent here.

### 5. Unequal access

Defendants contend that plaintiff failed to allege he was denied "equal access" to the sidewalk. Section 54.3, however,

---

[5] Defendants contend plaintiff could not state a cause of action for violating section 54.1. Plaintiff, however, stated in his opposition to the demurrer and reiterates on appeal that he does not seek to pursue a violation of section 54.1. Thus, we need not discuss whether plaintiff stated a cause of action under that section. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259 [Court of Appeal does not resolve matters unnecessary to appellate decision].)

9

unlike section 54.1, does not require an allegation of unequal access. "We may not insert words into a statute under the guise of interpretation . . . ." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 194; accord, *Kovacevic v. Avalon at Eagles' Crossing Homeowners Assn.* (2010) 189 Cal.App.4th 677, 685; see Code Civ. Proc., § 1858 [when construing statute, judge is not to insert what has been omitted].)  Because we find plaintiff sufficiently alleged a violation of section 54.3 for interference with admittance to or enjoyment of a public facility, we need not discuss the parties' other contentions.  (See *Shaw v. County of Santa Cruz, supra*, 170 Cal.App.4th at p. 259.)

D.  *Plaintiff Sufficiently Alleged Standing for Damages*

Defendants next assert plaintiff lacks standing to recover damages under section 54.3.  Defendants cite the following language from *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1224 (*Reycraft*), in support: "standing under section 54.3 of the DPA is established where a disabled [person] can show he or she actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion."  There is no dispute that plaintiff never sought defendants' services as a truck hauling business. Defendants' position is nonetheless unavailing.

In *Reycraft*, a disabled plaintiff sued a mobile home park, alleging it had denied her full and equal access to a swimming pool that did not have a lift or other device to help her get into or out of the pool.  (177 Cal.App.4th at p. 1216.)  The plaintiff's

sister-in-law was a tenant of the mobile home park. (*Id*. at p. 1215.) The mobile home park's rules required that guests register and pay a $10 fee to use the pool. (*Id*. at p. 1215.) The plaintiff neither registered nor paid the guest fee. (*Id*. at p. 1216.) The court noted that "the Park does not fall outside section 54.1 simply because an individual who went there did not pay the rent or fees and/or did not follow the rules. However, any such facts could be relevant to determining whether and to what extent a particular disabled individual suffered recoverable damages as a result of a violation of section 54.1." (*Id*. at p. 1218.) The court continued, "standing under section 54.3 of the DPA is established where a disabled plaintiff can show he or she actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion." (*Id*. at p. 1224.) Based on these facts, the trial court concluded that the plaintiff did not have standing to sue for damages because she had not sufficiently demonstrated "an actual denial or interference with access on a particular occasion, as opposed to merely becoming aware of discriminatory conditions in the pool area of the [mobile home park]." (*Id*. at p. 1225.) The court cited *Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254 (*Urhausen*) in support. (*Reycraft, supra*, 177 Cal.App.4th at pp. 1222-1223.) The plaintiff in *Urhausen* had sought damages against the owner and operator of a drug store for an alleged violation of section 54.1, namely, a denial of her full and equal access to the drugstore. (*Urhausen, supra*, 155 Cal.App.4th at p. 261.)

11

We do not read *Reycraft* and *Urhausen* for the proposition that plaintiffs may not sue someone other than the owner or operator of the public facility described in section 54, for violating a plaintiff's rights under the DPA. A defendant's ability to control a particular location may ultimately be relevant to the question of liability, that is, whether defendant interfered with plaintiff's admission to or enjoyment of a public facility. But nothing in the language of section 54.3 suggests that damages may not be recovered against non-owners or operators. To the contrary, section 54.3 broadly and plainly provides: "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in [s]ections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under [s]ections 54, 54.1 and 54.2 is liable for . . . actual damages . . . ."

"Under California law, a plaintiff generally has standing if he or she is able to allege some invasion of a legally protected interest." (*Reycraft, supra*, 177 Cal.App.4th at p. 1220.) In our view, *Reycraft* does not require that a plaintiff who sues for interference of his rights must present himself to *defendant's* business, with the intent to utilize *defendant's* services. Instead, a plaintiff who seeks damages for a violation of section 54.3 must establish that he "presented himself" to a "public place" with the intent of "utilizing its services in the manner in which those . . . services are typically offered to the public and was actually denied" admission or enjoyment (or had his admission or enjoyment interfered with) on a particular occasion. (*Reycraft, supra*, 177 Cal.App.4th at p. 1224.) Here, as alleged, plaintiff presented himself at a public place (the sidewalk) with the intent of using it in the manner it is typically offered to the public

12

(walking on it for travel), and actually had his enjoyment interfered with on six occasions.  Plaintiff therefore has standing to sue for damages.

E.  *Motion to Strike*

We review an order granting a motion to strike for abuse of discretion.  (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.)  "However, the proper interpretation of a statute, and its application to undisputed facts, presents a question of law subject to de novo review."  (*Ibid*.)  Because plaintiff stated a cause of action for violation of the DPA, the trial court committed reversible error by striking the first cause of action, the prayer for damages (including treble damages), and the prayer for attorney fees. (§ 54.3, subd. (a).)  Plaintiff has failed to argue how the trial court erred in striking the prayer for injunctive relief, which is not available under section 54.3.  We thus treat the point as waived. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 451-452.)

## IV.  DISPOSITION

The orders sustaining the demurrer and granting the motion to strike are reversed.  This matter is remanded for further proceedings consistent with this opinion.  Plaintiff is entitled to recover his costs on appeal from defendants.


KIM, J.


We concur:


BAKER, Acting P.J.


MOOR, J.

14